Tracy J. Copenhaver
COPENHAVER, KATH, KITCHEN & KOLPITCKE, LLC
P.O. Box 839
Powell, WY 82435
Telephone:   (307) 754-2276
Facsimile:   (307) 754-4744
E-mail:       tracy@ckattorneys.net
Attorney for Third-Party Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| HEALTHTECH MANAGEMENT SERVICES, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action No. 12cv042F |
| PAUL CARDWELL, | ) ) ) | |
| Defendant. | ) | |
| POWELL VALLEY HEALTH CARE, INC., a Wyoming nonprofit corporation, | ) ) ) ) | |
| Cross Claimant, | ) ) | |
| vs. | ) ) | |
| HEALTHTECH MANAGEMENT SERVICES, INC.; PAUL CARDWELL and MICHAEL J. PLAKE, | ) ) ) ) | |
| Cross Defendants. | ) | |

---

**CROSS CLAIM OF POWELL VALLEY HEALTH CARE, INC.
AGAINST HEALTHTECH MANAGEMENT SERVICES, INC.,
PAUL CARDWELL AND MICHAEL J. PLAKE**

---

COMES NOW, the Cross Claimant, Powell Valley Health Care, Inc. (hereinafter "PVHC"), by and through its undersigned attorneys, Tracy J. Copenhaver and Scott E. Kolpitcke of Copenhaver, Kath, Kitchen & Kolpitcke, LLC, and brings this Cross Claim against HealthTech, Paul Cardwell, and Michael J. Plake.  In support thereof, Cross Claimant alleges as follows:

## I.  JURISDICTION AND VENUE

1.  This court has jurisdiction over the subject matter of this Cross Claim pursuant to 28 U.S.C. §1332(a)(1), because the matter is controversy exceeds the sum in value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

2.  This court has personal jurisdiction over all parties pursuant to W.S. §5-1-107(a) which conveys personal jurisdiction because the exercise of personal jurisdiction over HealthTech, Paul Cardwell and Michael J. Plake is not inconsistent with the Wyoming or United States Constitutions.

3.  Pursuant to 28 U.S.C. §1391(b)(2), proper venue for the case is the United States District Court for the District of Wyoming because the acts and omissions complained of herein occurred within the District of Wyoming.

## II.  PARTIES

1.  PVHC is a Wyoming nonprofit corporation having its principal place of business in Powell, Wyoming.

2.  HealthTech Management Services, Inc. (hereinafter "HealthTech") is an Oregon corporation having its principal place of business in Franklin, Tennessee.

2

3.  Paul Cardwell is a citizen of the United States and, upon information and belief, currently is domiciled in Indiana.  At all times relevant to this Complaint, upon information and belief Paul Cardwell was domiciled in Wyoming and/or Indiana.

4.  Michael J. Plake is a citizen of the United States and upon information and belief, is currently domiciled in West Lafayette, Indiana.

## III.  FACTUAL BACKGROUND

1.  At all times relevant to this Complaint, PVHC operated in Powell, Wyoming a Wyoming nonprofit acute care hospital and was a long standing client of HealthTech pursuant to successive agreements for management services.  An Agreement for Management Services entered into as of November 1, 2010 (hereinafter "the Management Agreement") was in effect at all times relevant to this Cross Claim.  A copy of the Management Agreement is attached hereto as Exhibit "A" and incorporated herein by reference.

2.  HealthTech provides management services to various hospitals throughout the United States, typically pursuant to a "management agreement".

3.  PVHC was at all times relevant hereto a client hospital of HealthTech and received management services from HealthTech pursuant to the Management Agreement attached hereto as Exhibit "A".  In connection with the Management Agreement, HealthTech identified and provided an individual to serve as the Chief Executive Officer ("CEO") for PVHC.

4.  The individual provided by HealthTech to PVHC to serve as CEO of PVHC had a tripartite character.  First, the individual had the authority of an officer, specifically, the

3

CEO of PVHC. Second, the individual was a HealthTech employee for all purposes, including payroll, benefits, supervision and discipline. Third, the individual served as HealthTech's on-site, hospital-based agent in carrying out the CEO responsibilities under HealthTech's Agreement for Management Services with PVHC. Commencing on or about March 7, 2011, HealthTech employed Paul Cardwell and assigned him to PVHC to fulfill the duties, responsibilities, obligations and commitments of the CEO at PVHC and in accordance with the "Management Agreement".

5. While acting as CEO for PVHC, Paul Cardwell was employed as an employee of HealthTech and acted as an agent for and on behalf of HealthTech with regard to fulfilling the management responsibilities agreed to between PVHC and HealthTech in accordance with the Management Agreement and in regard to carrying out the duties, responsibilities, obligations and commitments of the CEO.

6. Pursuant to the Management Agreement, HealthTech was obligated, among other things, to provide PVHC with a CEO and to provide "supervision and effective management of the day to day business operations of PVHC through the CEO". The Management Agreement therefore, contemplated that the CEO would be HealthTech's agent for carrying out HealthTech's core responsibilities under the Management Agreement.

7. HealthTech initiated and conducted an application process for the purpose of employing an individual which HealthTech could assign to PVHC for the purpose of providing the CEO and/or HealthTech Management Services to PVHC in accordance with its Management Agreement. HealthTech represented that those candidates for the CEO position at PVHC whom HealthTech was willing to employ and recommend to be the CEO

at PVHC were reputable, qualified and capable of satisfactorily performing all the duties, obligations, responsibilities and commitments of the CEO position.

8.   Pursuant to a letter agreement signed and dated February 10, 2011 by Paul Cardwell, Paul Cardwell accepted HealthTech's offer to become a HealthTech employee and to serve as CEO of PVHC.

9.   Paul Cardwell as an employee of HealthTech, commenced serving as CEO for PVHC on or about March 7, 2011.   Pursuant to HealthTech's job description for this position, Paul Cardwell was given by HealthTech "on site CEO-level oversight responsibility for management and operation of a facility [PVHC] under a Management Agreement with HealthTech . . .".   Paul Cardwell was HealthTech's agent for the purpose of carrying out the CEO responsibilities under the Management Agreement.

10.   Pursuant to the job description of HealthTech for the CEO to be provided to PVHC, Paul Cardwell was expected to demonstrate "highly ethical and moral conduct in personal and professional action and communication, consistent with the goals and objectives of" HealthTech.

11.   PVHC expected and relied upon HealthTech to provide as its agent a CEO that would demonstrate "highly ethical and moral conduct in personal and professional action and communication", consistent with the goals and objectives of both HealthTech and PVHC.

12.   By virtue of, among other things, his job description, his position as CEO at PVHC, and his agent-principal relationship with HealthTech, Paul Cardwell as an agent of HealthTech was responsible for carrying out a substantial part of HealthTech's management responsibilities to PVHC, Paul Cardwell and HealthTech owed to PVHC a

5

fiduciary duty to honestly, reasonably and ethically carry out the management duties which HealthTech contracted to provide to PVHC.

13.   At all times relevant hereto, HealthTech was aware that PVHC required the services of an experienced CEO along with the necessary, appropriate and reasonable management services described in the Management Agreement.  HealthTech agreed to provide a CEO and such management and other services as were described in the Management Agreement.  The Board of Trustees of PVHC authorized HealthTech on the Board's behalf to exercise, in accordance with written policies of the Board, the reasonable business judgment of a hospital management company in the discharge of its duties under the Management Agreement, including supervision and effective management of the day to day business operations of PVHC through the CEO.  Beginning in March of 2011, HealthTech assigned Paul Cardwell to carry out HealthTech's management services as CEO of PVHC.

14.   Paul Cardwell was the acting CEO at PVHC from approximately March 7, 2011 through September 23, 2011.  During that time, Paul Cardwell as agent of HealthTech, failed to utilize reasonable or appropriate business judgment in the discharge of his duties, including the supervision and effective management of day to day business operations. Paul Cardwell engaged in conduct explicitly contrary to legitimate and reasonable business operations of PVHC.

15.   HealthTech agreed to carry out its management responsibilities in accordance with PVHC's policies, rules, regulations and applicable law and to oversee that PVHC had appropriate systems to coordinate PVHC policies, rules and regulations, including those relating to financial management.

6

16.   HealthTech, by and through its CEO, failed to carry out its responsibilities in accordance with PVHC policies, rules and applicable law, and failed to appropriately oversee that PVHC had appropriate systems to coordinate such hospital policies, rules and regulations specifically including, but not limited to, those regarding the financial management of PVHC.

17.   HealthTech agreed to provide CEO-level oversight of the recruitment, hiring, promotion, discharge, supervision, disciplining and management of all employees of PVHC (including employed positions) and including overseeing that PVHC had appropriate systems in place to administer compliance with the policies, rules, regulations and compliance programs adopted by the Board.  This CEO-level oversight was also to include providing information and recommendations to the Board of PVHC from time to time regarding the numbers and qualifications of employees needed in accordance with the Board-approved policies and budgets of PVHC.

18.   HealthTech failed to provide appropriate, reasonable, accurate oversight of the recruitment, hiring, discharge, supervision and management of hospital employees, including overseeing that PVHC had appropriate systems in place to administer compliance in that the CEO provided inaccurate, incorrect and/or misleading information and/or failed to provide accurate and true information to the Board pertaining to recruitment and hiring of employees.  HealthTech further failed to oversee that there were appropriate systems in place to administer compliance with PVHC policies, rules and regulations.  In addition, HealthTech failed to provide oversight and accurate information to the Board pertaining to the employment, hiring and recruitment of employees in accordance with Board-approved policies and budgets.

19.  HealthTech was responsible for and agreed to provide CEO-level oversight of the collection of accounts and monies owed to PVHC.  This CEO-level oversight of collection of accounts would include providing oversight and direction to business office personnel, including the CFO pertaining to the collection of bonus payments paid to newly-hired physicians who, pursuant to the employment agreement, were required to repay signing bonuses not earned.

20.  Paul Cardwell as acting CEO of PVHC inappropriately and unreasonably directed the CFO not to pursue collection efforts for a $35,000.00 signing bonus that was contractually to have been repaid by a medical doctor who had resigned without being able to fulfill his employment obligation and further inappropriately and, contrary to the best interests of PVHC, advised the resigning physician that he need not repay the signing bonus in the amount of $25,000.00 which was erroneously in reference to the $35,000.00 bonus.

21.  HealthTech, pursuant to its Management Agreement, agreed to provide CEO-level oversight of the payment of trade accounts and all other financial obligations of PVHC and further agreed to exercise reasonable diligence and care to apply the funds collected in the operation of PVHC to its financial obligations in a timely and prudent manner.

22.  As an agent of HealthTech and as CEO of PVHC, Paul Cardwell was the immediate supervisor of the CFO employed by PVHC and was the individual responsible for supervising and evaluating his work performance.  The CEO as supervisor of the CFO, executed performance action forms, and as supervisor, Paul Cardwell prepared a job performance evaluation of the CFO.

23. Contrary to the obligation of HealthTech to provide reasonable and appropriate CEO-level oversight of the payment of trade accounts and other financial obligations, Paul Cardwell as CEO actually embarked on a course of conduct in which he abused his position and actually directed that PVHC employees make payments to Plake and Associates for recruitment services that Paul Cardwell knew were not and never would be provided by Michael J. Plake for finding and placement of recruits that never occurred.

24. HealthTech failed to exercise reasonable diligence and care to oversee that the application of funds collected in the operation of PVHC were expended in a timely and prudent manner for appropriate and reasonable financial obligations.

25. There existed an implied covenant of good faith and fair dealing between HealthTech and PVHC to at all times act in good faith in carrying out the terms of the Management Agreement and promoting the best interests and welfare of PVHC as a client of HealthTech.

26. In addition to the implied covenant, the Management Agreement had an express covenant by which HealthTech agreed to act in good faith and use commercially reasonable efforts in performing all its obligations under the Management Agreement.

27. In violation of the fiduciary duty of HealthTech and the implied covenant of good faith and fair dealing between HealthTech and PVHC, Paul Cardwell, shortly after arriving at PVHC to assume the duties of CEO, implemented a scheme to deceive and defraud PVHC and improperly embezzle and misappropriate PVHC funds in an amount of not less than $847,934.00. Such conduct deprived PVHC of its right pursuant to the Management Agreement to have its CEO exercise highly ethical and moral conduct.

28.  The scheme consisted primarily of Paul Cardwell a) utilizing his position as CEO at PVHC and the authority bestowed upon him as the CEO or as provided in the Management Agreement to cause PVHC to make payments to Michael J. Plake, a purported vendor of recruitment services which, Paul Cardwell and Michael Plake then and there well knew, had not been and never would be rendered; and b) secretly requesting and receiving back from Michael J. Plake a substantial part of the funds Paul Cardwell directed be paid to Plake and Associates by PVHC.  In particular, Paul Cardwell caused PVHC to issue checks payable to Plake and Associates which, at the time, was actually Michael J. Plake d/b/a Plake and Associates, a long-standing personal acquaintance in Indiana, purportedly for recruiting services provided by Michael J. Plake to aid in recruiting physicians and non-physician personnel to PVHC, when Cardwell and Plake knew that in fact no recruiting services would be performed and that no portion of the purported recruiting fees would be legitimately earned.

29.  To cause PVHC to issue payments to Plake and Associates and to conceal the fact that such payments were fraudulent, Cardwell and Plake deceived various PVHC employees and/or Board members by, among other things and at various times between March 2011 and September 2011: a) representing that Plake and Associates was a legitimate recruiting firm, and representing that Michael J. Plake's wife was a recruiter for Plake and Associates, when in fact as Cardwell and Michael J. Plake then and there knew, neither Michael J. Plake d/b/a Plake and Associates nor his wife ever did or would perform recruiting services; b) concealing the fact that Michael J. Plake was in fact a long-standing personal acquaintance rather than a mere legitimate business contact; c) personally authoring e-mails regarding the purported but in fact nonexistence recruiting efforts; d)

using those e-mails, in part, to justify the issuance of payments to Plake and Associates; and e) after being requested by PVHC and/or its auditors to provide documentation to support the issuance of payments to Plake and Associates, presenting PVHC with purported contracts and invoices from Plake and Associates, knowing full well that the documents were inauthentic and gave the false impression that Plake and Associates actually intended to and did engage in recruiting efforts on behalf of PVHC.

30.   As a result of the successful acts of deception and fraud by Michael J. Plake, d/b/a Plake and Associates, and Paul Cardwell, PVHC issued twelve (12) checks in a total amount exceeding $847,000.00 between April 2011 and September 2011, when Paul Cardwell resigned from his position as PVHC's CEO (and his employment with HealthTech) on September 23, 2011.  In return for these payments as Michael J. Plake and Paul Cardwell knew would be the case, PVHC received neither recruiting services from Plake and Associates nor anything else of value.

31.   At all times during which Paul Cardwell was engaged in his scheme with Michael J. Plake to defraud PVHC, Paul Cardwell was the acting CEO assigned to PVHC pursuant to the Management Services Agreement between PVHC and HealthTech.

32.   Pursuant to the Management Agreement between PVHC and HealthTech, HealthTech agreed to provide reasonable and appropriate CEO-level oversight of the establishment and administration of accounting procedures and controls, in accordance with generally accepted accounting principles, and provide CEO-level oversight of the establishment and administration of systems for the development, preparation and safekeeping of records and books of account relating to the business and financial affairs of PVHC.

11

33. HealthTech failed to provide appropriate and reasonable CEO-level oversight for the establishment and administration of accounting procedures. In fact, the CEO engaged in conduct in which he directed PVHC employees to make payments to Plake and Associates without appropriate payment documents, contrary to reasonable accounting procedures.

34. Included in the obligation to provide CEO-level oversight of accounting procedures and controls was the preparation and delivery to the Board of a statement of income and expenses for each month relating to the operation of PVHC.

35. Contrary to the obligation to provide reasonable and appropriate CEO-level oversight for the delivery of the monthly statement of income and expenses, the CEO, in order to look better during his supervisor's visit, directed the CFO whom he supervised to move various expenses from the month of July 2011 when they were incurred, to June, in order to make the July financial picture look better. The net impact of this was to conceal from the Board certain July expenditures and record them in June financials that had previously been reviewed by the Board, without submitting to the Board any amended financial documents..

36. HealthTech agreed, pursuant to the terms of its Management Agreement, that the CEO would not enter into a purchase agreement with an annual expenditure in excess of $50,000.00 which had not previously been approved as a part of the annual budget without prior approval of the Board. The CEO represented to the CFO that he had received prior approval from the Board for numerous recruiting contracts, when in fact he had not, and also deceived and led the business office to believe that the recruiting

contracts were separate contracts for each position by generally identifying a separate lesser dollar amount for each recruitment contract.

37.  The CEO, after directing that payment be made to Plake and Associates and subsequent to inquiry by auditors as to the existence of contracts sometime in mid to late September, created and signed purchase agreements, contrary to the Management Agreement.

38.  The Management Agreement between HealthTech and PVHC prohibited Paul Cardwell as an agent of HealthTech and the acting CEO, from executing without specific prior approval of the Board, any recruitment agreements.  Paul Cardwell, contrary to this express prohibition in the Management Agreement, executed purported recruitment contracts which were ultimately supplied by Michael J. Plake to PVHC.  The recruitment contracts were represented to be for recruiting efforts provided by Plake and Associates for which Paul Cardwell had directed PVHC to make payment to Plake and Associates for an amount in excess of $847,000.00.

39.  Paul Cardwell, while acting as CEO and agent of HealthTech, failed to properly and responsibly carry out his duties as CEO of PVHC.

40.  Pursuant to the Management Agreement, PVHC agreed to reimburse HealthTech for the salary and benefits by paying to HealthTech an amount equal to the sum of the CEO's salary plus an additional 30% for benefits and the administration thereof. PVHC also agreed to reimburse HealthTech for other costs and expenses incurred by HealthTech in connection with the CEO including, but not limited to, travel, out-of-pocket expenses, and relocation costs and expenses.  PVHC paid to HealthTech at least $151,368.97 as reimbursement to HealthTech for costs relating to the employment, salary,

benefits and/or expenses of Paul Cardwell as CEO. Paul Cardwell failed to fulfill his duties, responsibilities and obligations as CEO and in fact embarked on a course of conduct clearly detrimental to the interests and welfare of PVHC. As a result thereof, PVHC is entitled to be reimbursed for the full cost of sums paid by PVHC to reimburse HealthTech for Paul Cardwell.

41. Pursuant to the Management Agreement between PVHC and HealthTech, PVHC agreed as compensation for services to be rendered by HealthTech to pay to HealthTech a base annual management fee of $227,435.38 annually (the "base annual management fee"). HealthTech failed to deliver the services contracted for by PVHC and specifically failed to provide a competent, qualified and honest CEO to carry out the duties of a CEO in a highly ethical and moral manner, which has resulted in PVHC not receiving the benefit of its bargain and, in fact, being substantially damaged as a result thereof. The management fee for the year November 1, 2010 through October 31, 2011 was not earned by HealthTech and PVHC is entitled to recover the management fee paid for management services it did not receive.

42. HealthTech agreed to indemnify, defend and hold harmless PVHC from any and all expenses (including, but not limited to, reasonable attorney fees and court costs), loss, liability, and claims of any kind whatsoever for damage to property, directly or indirectly, arising from or alleged to arise from or in any way connected with, the performance by HealthTech of its obligations under the Management Agreement where such expense, loss, liability or claim is incurred by PVHC primarily as a result of a) the grossly negligent acts or omissions of HealthTech; or b) the willful and wanton misconduct of HealthTech.

43. Paul Cardwell was an employee of and agent for HealthTech for purposes of carrying out HealthTech's duties under the Management Agreement with PVHC. As a result of HealthTech's failure to carry out its duties, PVHC incurred a substantial loss and expense and this loss was as a direct result of the grossly negligent acts or omissions and/or willful and wanton misconduct of HealthTech and its agent Paul Cardwell.

44. HealthTech is responsible for all damages incurred by PVHC as a result of the conduct and actions or inactions of HealthTech and/or its agent, Paul Cardwell, including reasonable attorney fees and court costs.

45. The Management Agreement entered into between PVHC and HealthTech has an express provision which in the event of any dispute between HealthTech and PVHC, allows the prevailing party to recover reasonable legal expenses, including reasonable attorney fees, expert witness fees, and costs.

<u>COUNT I</u>
<u>FRAUD/THEFT</u>

46. Paragraphs 1 through 45 above are hereby incorporated as though set forth in full herein.

47. Paul Cardwell and Michael J. Plake d/b/a Plake and Associates, have intentionally engaged in a scheme and course of conduct to defraud and/or steal from PVHC a sum of money in excess of $847,000.00.

48. Paul Cardwell and Michael J. Plake made false representations to PVHC as set forth above including, but not limited to, allegations that Paul Cardwell was entering into agreements with Plake and Associates for the recruiting of a substantial number of

physician and non-physician employees. Paul Cardwell represented that he was familiar with Plake and Associates and it was a legitimate recruiting firm that he had previously used, when in fact neither he nor Plake and Associates intended to recruit any personnel to PVHC. Plake and Associates was not a legitimate recruiter and never intended to conduct recruiting efforts. Paul Cardwell intentionally misrepresented to Calvin Carey as CFO that he had Board authorization to pay Plake and Associates for recruiting various physicians and other medical personnel, and at all times led the business office to believe there was a legitimate search being conducted by a legitimate recruiting firm, with the intent of locating an employee to fill a position, all of which representations were false. The false representations were intentionally made to induce PVHC to make payments which were in fact made to Michael J. Plake, d/b/a Plake and Associates, in an amount in excess of $847,000.00. The false representations of Paul Cardwell and Michael J. Plake were relied upon by PVHC and specifically, personnel within the business office, to make payment to Plake and Associates for services that were never received nor intended to be delivered. PVHC reasonably believed that the representations of Paul Cardwell and Michael J. Plake were true and made payments to Plake and Associates in excess of $847,000.00, to the detriment of PVHC. Paul Cardwell received from Michael J. Plake, d/b/a Plake and Associates, a substantial amount of the money paid to Plake and Associates as a kick-back for services that were never delivered. As a result of the conduct of Michael J. Plake and Paul Cardwell, there was an intentional and unlawful taking of money to the deprivation of PVHC.

49. Paul Cardwell, after resigning from his position as CEO, took keys, a cell phone, and a laptop computer belonging to PVHC. Despite requests to return these items, Paul

16

Cardwell refused to return the keys, cell phone and computer hard drive.  As a part of Paul Cardwell's scheme to defraud and deceive PVHC, Paul Cardwell returned the laptop with a substituted hard drive.  Paul Cardwell has never returned the hard drive to PVHC.  The hard drive contains confidential PVHC information which belongs to PVHC.  Paul Cardwell engaged in this conduct with the intent and purpose of the destruction of evidence or otherwise to deprive PVHC of the ability to access evidence of his wrongdoing.

COUNT II
INTENTIONAL MISREPRESENTATION

50.  Paragraphs 1 through 49 above are hereby incorporated as though set forth in full herein.

51.  Paul Cardwell and Michael J. Plake intentionally misrepresented to PVHC that there was a legitimate business arrangement to recruit numerous physician and non-physician personnel to PVHC, which representations also included those set forth above in this Cross Claim and which representations were in fact false and were known to be false by Paul Cardwell and Michael J. Plake.  PVHC believed the representations to be true and relied upon them, and was thereby induced to make payments in excess of $847,000.00 to Plake and Associates for services that were never intended to be delivered and never were delivered, causing damage to PVHC in an amount in excess of $847,000.00.

COUNT III
BREACH OF CONTRACT

52.  Paragraphs 1 through 51 above are hereby incorporated as though set forth in full herein.

53. HealthTech agreed to and was responsible for reasonably and appropriately carrying out management responsibilities in accordance with the terms of the Management Agreement. HealthTech breached the Management Agreement by failing to reasonably and appropriately carry out the Management Agreement, specifically including, but not limited to, each of the obligations of HealthTech as described in the aforementioned paragraphs. As a result of the breach of the Management Agreement by HealthTech, PVHC has sustained damages that will be proven at trial and which will include, but not be limited to, the loss of approximately $847,934.00 paid to a fictitious recruiter at the directive of HealthTech's employee and acting CEO, contrary to the ethical and moral obligations of the CEO to be provided by HealthTech and contrary to the management and oversight responsibilities of HealthTech, as well as the express contractual prohibition of the CEO entering into recruitment contracts. As a result of the breach of contract by HealthTech, PVHC has been damaged in an amount to be proven at trial, and which amount includes, but is not limited to, all sums paid to Plake and Associates; the amount of the signing bonus Paul Cardwell allowed resigning physicians to retain contrary to their contract with PVHC; all sums paid to HealthTech as invoiced for salaries, benefits and expenses related to Paul Cardwell; the management fee charged by HealthTech for the November 1, 2010 through October 31, 2011 annual contract; attorney fees, costs and expenses associated with proving the breach of contract; and such other damages to be proven at trial.

COUNT IV
BREACH OF IMPLIED COVENANT OF GOOD FAITH
AND FAIR DEALING (CONTRACT)

54. Paragraphs 1 through 53 above are hereby incorporated as though set forth in full herein.

18

55.    The implied covenant of good faith and fair dealing is inherent in every commercial contract and requires that neither party to the contract commit an act that would injure the rights of the other party to receive the benefits of the contract during its performance.

56.    The Management Agreement bestows upon HealthTech the implied covenant of good faith and fair dealing and HealthTech is responsible for the acts and conduct of Paul Cardwell, who was its employee and was acting as its agent on its behalf in carrying out the terms and conditions of the CEO management functions of the Management Agreement.  HealthTech, by failing to carry out its management responsibilities and by failing to exercise reasonable and prudent oversight and training of Paul Cardwell, or directly through Paul Cardwell as its agent, violated the covenant of good faith and fair dealing implied in the Management Agreement, resulting in damage and injury to PVHC's right to receive the benefits of the agreement during its performance.

57.    As a direct and proximate cause of HealthTech's breach of the implied covenant of good faith and fair dealing, PVHC has sustained and continues to sustain extensive damages in contract in an amount in excess of $75,000.00 to be determined at trial.

COUNT V
BREACH OF IMPLIED COVENANT OF GOOD FAITH
AND FAIR DEALING (TORT)

58.    Paragraphs 1 through 57 above are hereby incorporated as though set forth in full herein.

59.    PVHC and HealthTech had a special relationship of trust and reliance arising from, among other things: a) HealthTech's unique position as a management service

company with expertise and resources to provide management services to PVHC under the Management Agreement; and b) PVHC affording to HealthTech separate consideration in addition to the management services fee for all costs and expenses relating to the CEO who was an employee of HealthTech.

60. HealthTech violated the implied covenant of good faith and fair dealing and injured PVHC's right to receive the benefits of the agreement during its performance.

61. As a direct and proximate cause of HealthTech's breach of the implied covenant of good faith and fair dealing, PVHC has sustained and continues to sustain extensive damage in contract in an amount in excess of $75,000.00 to be determined at trial.

COUNT VI
NEGLIGENCE

62. Paragraphs 1 through 61 above are hereby incorporated as though set forth in full herein.

63. HealthTech, pursuant to the terms and conditions of its Management Agreement, owed a duty to PVHC to provide reasonable and appropriate management services to PVHC.

64. Paul Cardwell, while acting as an employee of HealthTech, was an agent of HealthTech and HealthTech as the employer of Paul Cardwell was and is responsible for the conduct and actions of Paul Cardwell in providing the management services which HealthTech had a duty to provide to PVHC.

65. HealthTech violated its duty which it owed to PVHC to provide appropriate management services to PVHC.

66. As a result of the breach of the duty owed by HealthTech to PVHC, PVHC has sustained damages as described above and/or which will be proven at the time of trial and which exceed the sum of $75,000.00. The breach of the duty for management services owed by HealthTech to PVHC was the proximate cause of the damages sustained by PVHC.

WHEREFORE, Cross Claimant Powell Valley Health Care, Inc., prays as follows:

1. That judgment be entered for and on behalf of PVHC and against HealthTech, Paul Cardwell and Michael J. Plake.

2. That the Court award to PVHC damages as set forth above or in such amount as is proven at trial.

3. That the Court award to the PVHC and against HealthTech, all attorney fees, costs and expenses incurred by PVHC to investigate, develop, plead and prove its cause of action against HealthTech arising out of the breach of the Management Agreement.

4. That the Court award to the PVHC such other and further relief as it may deem just and equitable.


## DEMAND FOR JURY TRIAL

COMES NOW, PVHC, by and through its undersigned counsel, and pursuant to Rule 38, Federal Rules of Procedure, demands a trial by jury on all claims of PVHC so triable.

DATED this _____ day of _____, 2012.

_____
TRACY J. COPENHAVER, State Bar #5-2063
SCOTT E. KOLPITCKE, State Bar #6-3083
COPENHAVER, KATH, KITCHEN &
KOLPITCKE, LLC
P.O. Box 839, Powell, WY 82435; (307) 754-2276
tracy@ckattorneys.net
Attorneys for Powell Valley Health Care, Inc.,
Cross Claimant

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April ____, 2012, I served a copy of the foregoing Cross Claim upon the following parties of record, by placing such copies in the United States mail at Powell, Wyoming, addressed as follows:

Brad Cave
Holland & Hart, LLP
P.O. Box 1347
Cheyenne, WY 82003-1347
Attorney for Plaintiff

Robert W. Horn, P.C.
P.O. Box 4199
Jackson, WY 83001-4199
Attorney for Paul Cardwell

Robert W. York
Robert W. York & Associates
7212 North Shade land Ave., Suite 150
Indianapolis, IN 46250
Attorney for Paul Cardwell

_____
COPENHAVER, KATH, KITCHEN &
KOLPITCKE, LLC